[No. A131181. First Dist., Div. Five. June 29, 2012.]

THE PRESS DEMOCRAT, Plaintiff and Appellant, v.
SONOMA COUNTY HERALD RECORDER, Defendant and Respondent.

COUNSEL

Bryan Cave, Roger Myers, Rachel Matteo-Boehm and Katherine Keating for Plaintiff and Appellant.

Kirby Noonan Lance & Hoge, Michael L. Kirby, Jonathan A. Boynton; Demeo Demeo & West and Carmen D. Sinigiani for Defendant and Respondent.

OPINION

**JONES, P. J.**—"[C]ertain legal notices—such as probate and foreclosure notices—'must . . . be published in a newspaper of general circulation . . . .' " (*In re Establishment of Eureka Reporter* (2008) 165 Cal.App.4th 891, 895 [81 Cal.Rptr.3d 497].) Government Code section 6000[1] defines a " 'newspaper of general circulation' " as "a newspaper published for the dissemination of local or telegraphic news and intelligence of a general character, which has a bona fide subscription list of paying subscribers, and has been established, printed and published at regular intervals in the State, county, or city where publication, notice by publication, or official advertising is to be given or made for at least one year preceding the date of the publication, notice or advertisement."

Section 6006[2] creates a narrow exemption to section 6000's requirement that a newspaper must be printed in the place of publication. Pursuant to section 6006, a newspaper may qualify as a "newspaper of general circulation" without being printed in the "place of publication" if the newspaper "met all the requirements to qualify as an established newspaper of general circulation before 1923 and has continued to meet all the standards in force at that time." (*In re Norwalk Call* (1964) 62 Cal.2d 185, 189 & fn. 2 [41 Cal.Rptr. 666, 397 P.2d 426]; see *In re The Anaheim Daily Gazette* (1963) 214 Cal.App.2d 438, 440–441 [29 Cal.Rptr. 520].)

The Sonoma County Herald Recorder (Herald Recorder) was adjudicated a "newspaper of general circulation" in 1953 and currently publishes various legal notices, such as notices of trustee sales. In 2010, the Press Democrat—a Sonoma County daily newspaper and a competing "newspaper of general circulation"—moved to vacate the Herald Recorder adjudication. The trial

---

[1] Unless otherwise noted, all further statutory references are to the Government Code.

[2] Section 6006 provides: "Nothing in this chapter alters the standing of any newspaper which, prior to the passage of Chapter 258 of the Statutes of 1923, was an established newspaper of general circulation, irrespective of whether it was printed in the place where it was published for a period of one year as required."

court denied the motion, concluding the Herald Recorder "met the requirements for a newspaper of general circulation before 1923" and was "exempt from the mandate of local printing" pursuant to section 6006. The court also concluded the Press Democrat did not show the Herald Recorder "lack[ed] a bona fide subscription list of paying subscribers, a list sufficient in quantity and . . . diversity."

The Press Democrat appeals. It contends the court erred by denying the motion to vacate because the Herald Recorder did not qualify for the section 6006 exemption and, in the alternative, because the Herald Recorder did not establish it had a "bona fide subscription list of paying subscribers" under section 6000.

■ We reverse. We conclude the court erred by denying the motion to vacate because the Herald Recorder did not demonstrate it qualified for the section 6006 exemption.

## FACTUAL AND PROCEDURAL BACKGROUND

In April 1953, the Herald Recorder, then operating as the Sonoma County Herald, petitioned for adjudication as a newspaper of general circulation under section 6000. The petition alleged the Sonoma County Herald (1) was a "newspaper of general circulation published for the dissemination of local and telegraphic news and intelligence of a general character at Santa Rosa, in the County of Sonoma"; (2) "ha[d] a bona fide subscription list of paying subscribers"; and (3) had been printed, established, and published at regular intervals in Santa Rosa "since 1899." In May 1953, the court granted the unopposed petition and entered a judgment establishing the Sonoma County Herald a newspaper of general circulation. The court determined, among other things, the Sonoma County Herald had a "bona fide subscription list of paying subscribers."

The Sonoma County Herald changed its name to the Herald Recorder and, in 1963, the court modified the judgment to reflect the name change. In 1988, the Los Angeles-based Daily Journal Corporation acquired the Herald Recorder and later moved the printing of the newspaper to the Daily Journal Corporation's Los Angeles printing facilities.

The Herald Recorder publishes "a large percentage of the Notices of Trustee's Sales in the City of Santa Rosa and the County of Sonoma." It also publishes "some notices for the County of Sonoma, such as Ordinances and Notice[s] of Hearings."

*The Press Democrat's Motion to Vacate the Herald Recorder Adjudication*

The Press Democrat is a daily newspaper circulated in Santa Rosa and throughout Sonoma County. It was adjudicated a newspaper of general circulation in 1951. Approximately 42,842 subscribe to its weekday editions in Sonoma County; approximately 20,499 subscribe to the weekday editions in Santa Rosa. The New York Times Company owns the Press Democrat.

In August 2010, the Press Democrat moved to vacate the judgment establishing the Herald Recorder as a newspaper of general circulation (§ 6024). The Press Democrat argued the Herald Recorder " 'ceased to be' a newspaper of general circulation" because it was not printed in the city or county of publication and did not have a bona fide list of paying subscribers pursuant to section 6000. It also contended the Herald Recorder could not qualify as a newspaper of general circulation pursuant to section 6008, which provides alternate criteria for qualifying as a newspaper of general circulation. Finally, the Press Democrat claimed the Herald Recorder did not qualify for the exemption set forth in section 6006.

The Press Democrat's verified statement of facts offered in support of the petition averred (1) the Daily Journal owns the Herald Recorder and publishes it in Los Angeles; (2) the Herald Recorder had 110 subscribers who received the newspaper five days a week, a decrease from 400 subscribers in 1989; and (3) the 2010 population of Sonoma County is 493,285 and the population of Santa Rosa is 163,436. The verified statement of facts attached supporting documents.

*Opposition and Reply*

In opposition to the motion, the Herald Recorder argued it was not required to be printed in the City of Santa Rosa pursuant to section 6006 because it was a newspaper of general circulation prior to 1923. The Herald Recorder claimed: "[i]t cannot be seriously argued that a newspaper publishing legal notices for over 100 years . . . would not be entitled to the . . . exemption" set forth in section 6006.

Relying on *In re San Diego Commerce* (1995) 40 Cal.App.4th 1229, 1232–1236 [47 Cal.Rptr.2d 303] (*San Diego Commerce*), the Herald Recorder also contended it had a bona fide list of paying subscribers pursuant to section 6000 because it had "82 total paid subscribers, 50 of whom reside in the City of Santa Rosa and 79 of whom reside in the County of Sonoma," which equates to "paid subscribers of slightly over .03% of the population," the same percentage as was found to be a bona fide list of paid subscribers in *San Diego Commerce*. The Herald Recorder noted that its paid subscribers included, among others, a library, a mortuary, a vineyard, a cabinet company, and a real estate company.

The Herald Recorder offered the declaration of its publisher, Christine Griego, in support of its opposition. Griego averred the Herald Recorder was established in 1899 and currently publishes a newspaper five days a week. Griego further stated that the "only copy from 1899 through 1940" she could locate was a March 24, 1906 edition of the Windsor Herald, a predecessor of the Herald Recorder, containing a school bond election notice. Griego averred the election notice "appear[ed] to be a legal notice." Finally, Griego averred that she located a copy of the May 30, 1949 "50th [A]nniversary" edition of the Santa Rosa Herald, "another predecessor to the Herald Recorder" which contained three pages of legal notices, including notices of trustee sales, and notices to creditors. The Herald Recorder moved the court to take judicial notice of these prior editions.

The Herald Recorder also filed an August 31, 2010 list of its "paid subscribers" under seal (Subscription List). Without citing any authority, the Herald Recorder claimed the Subscription List constituted a "trade secret." The unredacted version of the Subscription List listed 80 "subscribers" in the County of Sonoma by name, address, phone number, account number, and the date the subscription expired.[3] As of the November 2, 2010 hearing on the motion to vacate, 10 subscriptions had expired, leaving a total of 45 subscriptions in Santa Rosa and 26 in Sonoma County.

Counsel for the Herald Recorder gave the Press Democrat a redacted copy of the Subscription List on an unspecified date before the hearing. The redacted copy omitted the name, address, and telephone number of the "subscriber." The day before the hearing on the motion to vacate, counsel for the Herald Recorder made the unredacted Subscription List available to counsel for the Press Democrat.

The Press Democrat raised two arguments in reply. First, it argued the Herald Recorder failed to satisfy its burden of proving it qualified for the section 6006 exemption. The Press Democrat noted the absence of a court decree prior to 1923 adjudicating the Herald Recorder as a newspaper of general circulation and argued the Herald Recorder did not and could not establish it "met all the requirements to qualify as an established newspaper of general circulation" before 1923, specifically that it had a bona fide list of paying subscribers prior to 1923 and was printing legal notices prior to 1923. The Press Democrat also argued the school bond election notice in the 1906 edition of the Windsor Herald was not a legal notice required to be published in a newspaper of general circulation.

---

[3] The Subscription List contains 82 "subscribers," but two of these subscribers (subscribers Nos. 0076911 & 0083816) are not located in the County of Sonoma. As of the January 1, 2011 order denying the motion to vacate, another 16 subscriptions had expired.

˙ Second, the Press Democrat contended the Herald Recorder did not prove it qualified for the section 6006 exemption because it did not currently have a bona fide list of paying subscribers under section 6000. The Press Democrat claimed the Herald Recorder's "purported subscription list" was unauthenticated, inadmissible, and "improperly filed under seal" under California Rules of Court, rule 2.551(b).[4] In the alternative, the Press Democrat argued the list of subscribers was "too miniscule" to constitute a bona fide list of paying subscribers. According to the Press Democrat, the subscriber-to-population ratio in Santa Rosa was .027 percent "[a]fter expired or expiring subscriptions [were] removed from its two-month old [subscription] list."

*The Court's Tentative Ruling and the Hearing on the Motion to Vacate*

In a tentative ruling, the court denied the motion to vacate.[5] The court concluded the Herald Recorder has "continually published a newspaper in this county since 1899 . . . While not currently printed here in Sonoma County, the Herald Recorder met the requirements for a newspaper of general circulation before 1923; therefore, it is now exempt from the mandate of local printing . . . [S]ection 6006; *In re Norwalk Call*[,] [*supra*], 62 Cal.2d [at p.] 189; *Brown Newspaper Publishing Company* [*v. Superior Court* (1981)] 114 Cal.App.3[d] 462, 467–468 [170 Cal.Rptr 611]. Moreover, [the Press Democrat] has not shown that the Herald Recorder presently lacks a bona fide subscription list of paying subscribers, a list sufficient in quantity and in diversity. . . . *San Diego Commerce*[,] [*supra*], 40 Cal.App.4th [at pp.] 1232–1236. The [Press Democrat]'s argument that the [Herald Recorder] does not satisfy all of the requirements of . . . section 6008 is of no material consequence, since it remains qualified as a newspaper of general circulation under the older, alternative provisions of section 6000. [¶] The motion will be denied, continuing the local experience of two newspapers of general circulation, not one."

At the hearing, counsel for the Press Democrat argued there was no evidence the Herald Recorder was a newspaper of general circulation before 1923. Counsel argued the 1906 and 1949 copies of the Herald Recorder submitted in opposition to the motion to vacate did not demonstrate the Herald Recorder was a newspaper of general circulation in 1923, specifically because the school bond notice in the copy of the 1906 Herald Recorder "was not covered by the predecessor to [section] 6000. In other words, it is not a legal notice. . . . [Former] Political Ed[ucation] Code Section 1881 . . . specifically says that a notice of a school district bond election can be

---

[4] The Press Democrat filed written objections to the Subscription List on these grounds and asked the court to take judicial notice of various sections of the former Political Code.

[5] The court granted the parties' requests for judicial notice but overruled the Press Democrat's evidentiary objections to the Subscription List filed under seal.

published in any newspaper in the county. It does not require publication in a newspaper of general circulation. So there is no evidence in the record of the publishing of any legal notices prior to 1923."

Counsel also noted there was no evidence the Herald Recorder had a bona fide list of paying subscribers in 1923 and discussed several cases addressing whether a certain number of paying subscribers constituted a "bona fide list of paying subscribers" pursuant to section 6006.[6] Counsel also reiterated why the court erred by tentatively denying the Press Democrat's objections to the Herald Recorder's motion to seal.

In response, counsel for the Herald Recorder questioned the Press Democrat's motives for moving to vacate the judgment establishing the Herald Recorder as a newspaper of general circulation. Counsel also contended the school bond notice published in the 1906 edition of the Herald Recorder was a "legal notice" and that the Herald Recorder's inability to locate a paid subscriber list from 1923 did not preclude it from qualifying as a newspaper of general circulation in 1923.

At the conclusion of the hearing, the court adopted the tentative ruling and denied the motion to vacate the judgment establishing the Herald Recorder as a newspaper of general circulation for the City of Santa Rosa and the County of Sonoma. A few days later, the court issued a protective order nunc pro tunc designating the subscriber list as " 'Attorneys' Eyes Only' " and designating it "confidential." In a January 2011 written order, the court denied the Press Democrat's motion to vacate the adjudication of the Herald Recorder as a newspaper of general circulation for Santa Rosa and Sonoma County.

## DISCUSSION

*The Court Erred by Denying the Motion to Vacate Because the Herald Recorder Did Not Demonstrate It Qualified for the Section 6006 Exemption*

■ As the party moving to vacate the adjudication of the Herald Recorder as a newspaper of general circulation, the Press Democrat had the burden to establish the Herald Recorder no longer qualified as a newspaper of general circulation under section 6000.[7] (*In re Carson Bulletin, supra*, 85 Cal.App.3d

---

[6] Certain attributions to arguments in our summary are at odds with the official reporter's transcript. We found numerous typographical errors and arguments attributable to the wrong speaker or party. For example, arguments made by counsel for the Press Democrat are attributed to the court and arguments made by the Press Democrat are attributed to counsel for the Herald Recorder.

[7] Section 6024 provides that a judgment declaring a newspaper as one of general circulation "may be vacated . . . or set aside by the court . . . on the motion of any person . . . upon:

at p. 791.) The Press Democrat satisfied that burden. It alleged, and the Herald Recorder did not dispute, that it was no longer "printed and published at regular intervals in the State, county, or city where publication, notice by publication, or official advertising is to be given or made for at least one year preceding the date of the publication, notice or advertisement." (§ 6000.)

■ But the Herald Recorder claimed it was "not required to be printed in the City of Santa Rosa" because it qualified for the exemption to the printing requirement set forth in section 6006. "[S]ection 6006 creates two classes of newspapers of general circulation: those in existence before 1923 and those initiated thereafter, and exempts those venerable publications of the first class from the requirement that printing be done in the place of publication. . . . [T]he plain meaning of section 6006 . . . is to free newspapers of general circulation in existence before 1923 from the requirement that they be printed in the place of publication." (*In re The Anaheim Daily Gazette, supra*, 214 Cal.App.2d at p. 444.) A newspaper coming within the section 6006 exemption need not be printed in the place of publication if it "met all the requirements to qualify as an established newspaper of general circulation before 1923 and has continued to meet all the standards in force at that time." (*In re Norwalk Call, supra*, 62 Cal.2d at p. 189.)

■ The Herald Recorder had the burden to prove it came within the section 6006 exemption. (See *In re The Anaheim Daily Gazette, supra*, 214 Cal.App.2d at pp. 441–442; *In re Norwalk Call, supra*, 62 Cal.2d at p. 187.) "It is a 'familiar' and 'longstanding' legal principle that ' "[w]hen a proviso . . . carves an exception out of the body of a statute or contract those who set up such exception must prove it." ' " (*Simpson Strong-Tie Co., Inc. v. Gore* (2010) 49 Cal.4th 12, 23 [109 Cal.Rptr.3d 329, 230 P.3d 1117], quoting *Meacham v. Knolls Atomic Power Laboratory* (2008) 554 U.S. 84, 91 [171 L.Ed.2d 283, 128 S.Ct. 2395]; see Evid. Code, § 500 [a party has the burden of proof as to each fact the existence or nonexistence of which is essential to the claim for relief or defense asserted]; *Norwood v. Judd* (1949) 93 Cal.App.2d 276, 282 [209 P.2d 24] ["[o]ne claiming an exemption from a general statute has the burden of proving that he comes within the exemption"].)

■ To qualify for the section 6006 exemption, the Herald Recorder had to prove "facts sufficient" (*In re The Anaheim Daily Gazette, supra*, 214

---

[¶] . . . [¶] (c) A satisfactory showing made to the court that the newspaper has ceased to be a newspaper of general circulation." (§ 6024, subd. (1)(c).) "[N]otwithstanding the use of the word 'may' in section 6024, the prior judgment *must* be vacated where it is shown that the newspaper no longer qualifies as one of general circulation. [Citation.]" (*In re Carson Bulletin* (1978) 85 Cal.App.3d 785, 790 [149 Cal.Rptr. 764], italics added.)

Cal.App.2d at p. 442) to demonstrate it "met all the requirements to qualify as an established newspaper of general circulation before 1923 and has continued to meet all the standards in force at that time." (*In re Norwalk Call, supra*, 62 Cal.2d at p. 189; see *Brown Newspaper Publishing Company, Inc. v. Superior Court, supra*, 114 Cal.App.3d at p. 467 ["newspaper met all the requirements to qualify as an established newspaper of general circulation before 1923"].)[8] It is not—as the Herald Recorder suggests—the Press Democrat's burden to "to offer . . . evidence which proves or suggests that the Herald Recorder was not qualified to publish legal notices in 1923."

Before 1923, former Political Code section 4460 defined a newspaper of general circulation as "a newspaper published for the dissemination of local or telegraphic news and intelligence of a general character, having a bona fide subscription list of paying subscribers, and which shall have been established, printed and published at regular intervals, in the state, county, city, city and county, or town, where such publication, notice by publication, or official advertising is given or made, for at least one year preceding the date of such publication, notice or advertisement. . . ." In 1943, the Legislature replaced section 4460, without significant modifications, with section 6000. (*In re Establishment of Eureka Reporter, supra*, 165 Cal.App.4th at p. 898 & fn. 6; see former Pol. Code, § 4460 [added by Stats. 1905, ch. 345, pp. 406, 407], replaced without modification by § 6000 [added by Stats. 1943, ch. 134, p. 987].)

The Herald Recorder did not prove it was a newspaper of general circulation prior to 1923. In opposition to the motion to vacate, the Herald Recorder presented the following evidence: (1) the declaration of its publisher, Griego, who averred the Herald Recorder was established in 1899; (2) Griego's further declaration that the only copy of the Herald Recorder's predecessor Griego could locate from the years 1899 to 1940 was a March 24, 1906 edition of the Windsor Herald, containing a "School Bond Election Notice" that she asserted "appear[ed] to be a legal notice"; and (3) a copy of the May 30, 1949 "50th Anniversary" edition of the Santa Rosa Herald, "another predecessor to the Herald Recorder" which contained three pages of legal notices, including notices of trustee sales, and notices to creditors.

---

[8] One obvious way to satisfy this burden is with a court decree adjudicating the newspaper as one of general circulation prior to 1923. (See, e.g., *In re Byers* (1933) 219 Cal. 446, 447–448 [27 P.2d 641] [1915 decree adjudicating the Peninsula News as a newspaper of general circulation pursuant to former Pol. Code, § 4460, the predecessor to Gov. Code, § 6000].) Such a decree "would be conclusive" (*In re The Anaheim Daily Gazette, supra*, 214 Cal.App.2d at p. 442) assuming the newspaper continued to meet the other requirements required by the statute. (*In re Norwalk Call, supra*, 62 Cal.2d at p. 189.) The Herald Recorder was not adjudicated as a newspaper of general circulation until 1953.

In opposition to the motion to vacate, the Herald Recorder claimed "[i]t cannot be seriously argued that a newspaper publishing legal notices for over 100 years . . . would not be entitled to the . . . exemption" in section 6006. The Herald Recorder repeats this same refrain on appeal, but—unlike the trial court—we are not persuaded for several reasons. First, the date the Herald Recorder was established has no bearing on whether it was a newspaper of general circulation prior to 1923. Similarly, the fact that a predecessor newspaper published legal notices in 1949 does not prove or even suggest that it published legal notices *prior to 1923*, as required by section 6006.

Second, Griego's claim that the school bond election notice "appear[ed] to be a legal notice" did not demonstrate the notice was a "legal notice" required to be published in a newspaper of general circulation. As it did in the trial court, the Press Democrat contends school districts were *not* required to publish notices in a newspaper of general circulation in 1906, when the Herald Recorder's predecessor newspaper published the school bond election notice. The Press Democrat relies on former Political Code section 1881, which required a notice of a school bond election to be "called by posting notices, signed by the board, in three of the most public places in the district, for not less than twenty days before the election; and if there is a newspaper published in the county, by publishing such notice therein not less than once a week for three successive weeks." (Former Pol. Code, § 1881, added by Stats. 1881, ch. 54, p. 62; see *id.*, § 4458 [added by Stats. 1903, ch. 361, § 1, p. 478, amended by Stats. 1905, ch. 345, § 1, p. 406]; see *Palos Verdes Library Dist. v. McClellan* (1929) 97 Cal.App. 769, 777–778 [276 P. 600].) The Herald Recorder did not respond to this argument in the trial court or on appeal.

In the absence of any evidence that it published legal notices before 1923, the Herald Recorder failed to satisfy the requirements of section 6006 because it did not establish it published " 'local or telegraphic news and intelligence of a general character' " before 1923 or that it had a bona fide subscription list of paying subscribers in 1923. The Herald Recorder concedes it did not provide a "paid subscriber list in existence sometime between 1899 and 1922," or produce a witness to "authenticate the content of each and every issue of a newspaper published in Santa Rosa some 90 years ago."

Because the Herald Recorder did not prove it qualified for the exemption set forth in section 6006, its adjudication as a newspaper of general circulation must be vacated because it is not printed in Santa Rosa or Sonoma County. (See *In re Covina Argus-Citizen* (1960) 177 Cal.App.2d 315, 318 [2 Cal.Rptr. 184] [trial court properly vacated adjudication of The Covina-Argus Citizen as a newspaper of general circulation where it was not "printed and published within the city of Covina"]; cf. *Brown Newspaper Publishing*

*Company, Inc. v. Superior Court, supra,* 114 Cal.App.3d at p. 467 [newspaper qualified for § 6006 exemption where it was "undisputed that petitioner's newspaper met all the requirements to qualify as an established newspaper of general circulation before 1923 . . ."].)

Having reached this result, we need not address the Press Democrat's claims that the Subscription List was "sealed in violation of the Rules of Court" and that the court erred by concluding the Herald Recorder currently has a "bona fide list of paying subscribers" under section 6000.

*The Requests for Judicial Notice*

In May 2011, the parties filed a joint request to augment the record with various documents that should have been, but were not, included in the clerk's transcript. These documents include the redacted Subscription List and the requests for judicial notice considered by the trial court in connection with the motion to vacate. We granted the request.

In July 2011, the Press Democrat filed an unopposed request for judicial notice asking the court to take judicial notice of various documents filed in connection with its motion to vacate and were judicially noticed by the trial court. We initially deferred a ruling on the request for judicial notice. We now grant the request. (Evid. Code, § 459 ["reviewing court shall take judicial notice of (1) each matter properly noticed by the trial court and (2) each matter that the trial court was required to notice under [Evidence Code] Section[s] 451 or 453"]; see Simons, Cal. Evidence Manual (2012 ed.) § 7:24, p. 560.)

In February 2012, the Press Democrat filed an unopposed supplemental request for judicial notice asking this court to take judicial notice of pleadings filed in the trial court and Court of Appeal by the Herald Recorder in *In re Molz* (2005) 127 Cal.App.4th 836 [26 Cal.Rptr.3d 131]. The Press Democrat claims these documents are "relevant to show that statements made by [the Herald Recorder] in the instant appeal . . . as to the proof requirements of . . . [section] 6006 and the legislative intent of California's adjudication statutes are inconsistent with statements made by the owner of [the Herald Recorder] on these exact issues in a prior adjudication proceeding."

We initially deferred a ruling on the supplemental request for judicial notice. We now deny the supplemental request for judicial notice for several reasons. First, *Molz* is an unrelated case concerning the Metropolitan News-Enterprise and the Daily Journal Corporation, neither of which are parties to this appeal. Second, the Press Democrat does not contend the statements in the Daily Journal's briefs in *Molz* are judicial admissions, nor does the Press Democrat claim judicial estoppel precludes the Herald Recorder's arguments in this appeal.

## DISPOSITION

The order denying the Press Democrat's motion to vacate adjudication of the Herald Recorder as a newspaper of general circulation pursuant to section 6024 is reversed and the matter is remanded to the trial court to enter a new order granting the motion to vacate. The Press Democrat is entitled to costs on appeal.

Simons, J., and Bruiniers, J., concurred.

A petition for a rehearing was denied July 24, 2012, and respondent's petition for review by the Supreme Court was denied September 18, 2012, S204572.